BRIJIDO PENA V. THE STATE.

No. 16872.  Delivered May 30, 1934.
Rehearing Denied June 27, 1934.

The opinion states the case.

*Alex F. Cox,* of Beeville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, imprisonment in the penitentiary for life.

Appellant was convicted for killing his wife.  Two witnesses for the State testified that they saw appellant shoot his wife twice with a pistol, saw her fall and saw her body after her death.  Another Mexican testified that he was approaching the scene of the shooting and heard it from a distance of about two hundred and fifty feet; that he presently met appellant about one hundred feet from where he heard the shooting, and then passed on and saw the body of deceased lying on the ground.  No witness testified questioning the fact that appellant killed his wife.  As we gather from the record it was sought to be put before the jury by the defense that appellant's wife had been intimate with another Mexican.

A Mr. Stewart testified that on said night and after the shooting he saw appellant down in the railroad yards and iden-

tified him, and engaged him in conversation. He asked appellant if he knew the sheriff was after him, and after first evading the question, appellant replied that he did, and further stated that he was waiting around until the moon went down so he could slip in and give up to the sheriff; that he was afraid of the Mexicans, that they might murder him. Appellant asked the witness if he was the law, and witness replied no, and he then offered to go with appellant and see that no one hurt him. They went together to the house of one Smith, and while there a Mexican girl working on the place asked appellant what he had done, and he laughed a little and said he had killed his woman. There is a bill of exceptions complaining of the admission of the testimony as to what was said by this girl and appellant's reply thereto. Appellant now claims that he was then under arrest. The bill of exceptions contains some eight pages of questions and answers certified by the trial court as necessary in order that the matter might be understood. We have carefully examined same and are of opinion that it fails to show that appellant was under arrest, or that he believed himself to be so, but rather that he regarded Mr. Stewart as a protector. In view of the fact that the uncontroverted testimony of all the other witnesses showed that appellant had shot and killed his wife, we fail to see the possible harm of the admission of the statement in any event. This matter is complained of in another bill of exceptions in which we find no merit. There is also a bill of exceptions complaining of the reception in evidence of a pistol delivered by appellant to Mr. Stewart, it being contended that there was no testimony showing that this particular pistol was the one used in the shooting. We see no error in the admission of the testimony. It was proven otherwise and without objection that appellant shot his wife with a pistol. There is a bill of exceptions complaining of the charge for various reasons, which has been examined and in which we do not find error.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In his motion for rehearing appellant renews his complaint of the ruling of the court in receiving the testimony of the witness Andrew Stewart to the effect that in his presence appellant said to a girl : "I killed my woman." As understood, this occurred at the time that Stewart

conducted appellant to the abode of the sheriff and before appellant was delivered to the sheriff. Stewart's testimony is in substance that while walking along the railroad track he observed a man hiding whom he finally recognized as the appellant. Appellant stated that he was hiding until the moon went down in order that he might safely go and give up to the sheriff. When appellant expressed fear that he might be injured in going to the office of the sheriff, Stewart agreed to conduct him there and protect him from harm. Appellant asked Stewart if he was an officer and received a negative reply. He also asked Stewart if he had a pistol. Stewart replied that he did not. When appellant was asked if he had a pistol, he said that he did and delivered it to Stewart.

W. A. Smith, who we understand to be the sheriff, testified:

"I heard that Brijido had done the shooting, and he was the one that I was looking for. I don't remember whether I saw the defendant that night or the next day, but Andrew Stewart caught him that night and brought him over here and locked him up in jail."

The declaration of the appellant to the young lady that "I killed my woman," was made upon inquiry made by the girl at the time. As we understand from the record, Stewart conducted appellant to the home of the sheriff and put him (appellant) in jail. Upon reconsideration, the circumstances attending the apprehension of the appellant and his incarceration in jail by the witness Stewart are regarded as rendering the appellant's declaration,—"I killed my woman"—as inadmissible for the reason that while not actually under arrest, the surroundings were such as to impress him with the view that he was in custody. The statute (Arts. 727 and 727a, C. C. P.) denying the admissibility of inculpatory evidence obtained from one in custody who at the time was unwarned, would render the declaration mentioned inadmissible. However, in the condition of the record, this court would not be authorized to grant the motion for rehearing and reverse the judgment for the reason that the evidence is conclusive that appellant shot and killed his wife, and there comes no testimony, either from him or his witnesses, justifying the act. The most that can be said is that there is some testimony by way of innuendo or hearsay that appellant and his wife had separated and that his wife had taken up with another man. This was not proved nor advanced by appellant as a defense or in mitigation of the penalty. The evidence that he committed the offense of murder is supported by direct testimony and is not controverted. Because of the

error committed in receiving the declaration mentioned, we would not be warranted in reversing the judgment of conviction.

The motion for rehearing is overruled.

*Overruled.*

I concur in overruling the motion, but am of opinion the testimony was admissible.

LATTIMORE, JUDGE.